Carol ANCATA, individually, as natural guardian of Tara Ancata, and as personal representative of Anthony Ancata, deceased, Plaintiff-Appellant,

v.

PRISON HEALTH SERVICES, INC., a Delaware Corp., Susan Colligan, Karen Sutton, R. Hargrove, Henry Blady, Robert Butterworth, and George Brescher, in his capacity as Sheriff of Broward County, Defendants-Appellees.

No. 84–5923.

United States Court of Appeals, Eleventh Circuit.

Aug. 26, 1985.

Peter M. Siegel, Randall C. Berg, Jr., Miami, Fla., for plaintiff-appellant.

Bruce W. Jolly, Ft. Lauderdale, Fla., for R. Butterworth & G. Brescher.

Deborah Mann, Robert Klein, West Palm Beach, Fla., for H. Blady.

Edward R. Nicklaus, Miami, Fla., for Prison Health Services.

Alexander Cocalis, Ft. Lauderdale, Fla., for Broward County.

Christopher R. Fertig, Fertig & Gamble, Lawrence J. Marraffino, Ft. Lauderdale, Fla., for S. Colligan, K. Sutton, & R. Hargrove.

Before HENDERSON and CLARK, Circuit Judges and TUTTLE, Senior Circuit Judge.

CLARK, Circuit Judge:

## I. FACTS

### A. *Procedural History*

This is an appeal from an order of the district court dismissing all counts of plaintiff's first amended complaint based upon 42 U.S.C. § 1983.

Plaintiff is the personal representative of the deceased's, Anthony Ancata's, estate and the guardian of his minor child Tara Ancata. Defendant Prison Health Services is and was the entity responsible for providing medical care to those housed at the Broward County Jail. Defendants Colligan, Sutton, Hargrove and Blady were all medical personnel employed by Prison Health Services, Inc. Robert Butterworth was sued in his official capacity as the sheriff of Broward County at the time of the incidents forming the basis of this lawsuit. Sheriff Brescher was sued in his official capacity as the current sheriff of Broward County. Broward County was sued for its alleged failure to provide adequate funding to address the medical needs of individuals incarcerated there.

Plaintiff's original complaint was filed in August of 1984. Each defendant, other than Prison Health Services, filed a motion to dismiss.[1] Before the court ruled on the motions to dismiss, the defendants consented to the filing of an amended complaint. This took place in October of 1984. Counts 1 and 2 of the complaint alleged that all the defendants violated plaintiff's decedent's right to be free from cruel and unusual punishment by the deliberate indifference to his serious medical needs. The remaining counts raised pendent state law claims. After the amended complaint was filed, defendant Broward County and defendant Blady filed motions to dismiss. The district court entered an order on November 19, 1984 dismissing all counts of the complaint against all defendants.[2] The district

---

1. Prison Health Services failed to answer and a default was entered on October 3, 1984. Its motion to set aside the default was later granted as part of the district court's order dismissing the first amended complaint as to all defendants. Appellant does not contest the vacation of the default order.

2. Motions to dismiss by the other defendants, except Prison Health Services, were filed subsequent to the order of dismissal. However, prior

court determined that counts 1 and 2 of the complaint as amended, alleging the constitutional violations, alleged at most, only medical malpractice. Thus, the court determined that dismissal as to all medical defendants was proper. With respect to the non-medical defendants, the district court found that the allegations against them were grounded on notions of respondeat superior and therefore were subject to dismissal. The district court dismissed the pendent state law claims as it had found no valid federal claim.

### B. *The Facts as Alleged in Plaintiff's Complaint*

The facts, as alleged in the plaintiff's complaint, indicate the following. Anthony Ancata was arrested and placed in pre-trial detention at the Broward County Jail on August 20, 1982. On August 29, 1982, he began to suffer from a variety of medical symptoms including swelling of the ankle, inability to sleep, chills, lower back pain, tingling and numbness of his hands, hyperventilation, severe pain in his back and right leg, double vision, and other serious problems. Despite his complaints, Prison Health Services and its employees, defendants Blady, Colligan, Sutton and Hargrove did little or nothing to evaluate the medical needs of Mr. Ancata.[3]

The defendants did administer such non-prescription drugs as Ben Gay and Tylenol II and suggested an orthopedic or psychiatric evaluation. However, they took no steps to have Ancata examined by either an orthopedic specialist or a psychiatrist. Rather, they informed Ancata and his family that he would not be referred to a non-staff specialist without a court order. Furthermore, they refused to acquiesce in the entry of a court order unless plaintiff agreed to bear the costs of the recommended diagnostic evaluation. Mr. Ancata, however, had already been declared indigent.

Ancata's appointed public defender successfully obtained a court order compelling an evaluation by an orthopedic specialist. The orthopedist recommended a neurological evaluation. However, Prison Health Services would again not agree to a medical evaluation by a neurologist without a court order. The second court order was again obtained by the public defender representing Mr. Ancata. After the neurological examination was conducted, Anthony Ancata was hospitalized. He was soon diagnosed as having leukemia. He died in the hospital on December 30, 1982 from respiratory failure.[4]

The appellant raises the following issues on appeal: (1) whether the complaint sufficiently alleged a case of deliberate indifference to serious medical needs thus rendering dismissal improper; (2) whether the federal claims asserted against the sheriff of Broward County and Broward County itself were premised solely on notions of respondeat superior; and (3) whether the dismissal of the pendent state law claims, if the federal claims are found to state a cause of action, was premature.

## II. THE LEGAL ISSUES IN CONTEXT

When reviewing an order granting a motion to dismiss for failure to state a claim, this court must accept the facts as pleaded to be true and resolve them in the light most favorable to the plaintiff. The motion to dismiss should not be granted unless it appears to a certainty, "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

to the filing of the first amended complaint, plaintiff had responded to the motions to dismiss of defendants Brescher, Butterworth and Broward County. However, plaintiff's time to respond to the motions to dismiss of the other defendants had not expired as of the time that the district court dismissed the complaint.

3. Defendant Blady was the jail doctor. Colligan was a registered nurse in charge of medical care at the jail. Sutton and Hargrove were registered nurses employed by Prison Health Services at the jail.

4. Plaintiff alleged that the respiratory failure was "possibly related to herpes pneumonitis and persistent bone marrow hypoplasia, possibly due to chemotherapy as well as marrow suppression by infection, possibly viral."

*Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is, as we have stated previously, "exceedingly low." *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Devel.*, 711 F.2d 989, 995 (11th Cir.1983).

It should also be noted at the outset in this case that the defendants fall into several different groups. Prison Health Services, as was noted previously, is the entity responsible, pursuant to an agreement between it and the county, for providing medical care to those housed at the Broward County Jail. Defendants Colligan, Sutton, Hargrove and Blady were all medical personnel employed by Prison Health Services. The issue to be resolved as to Prison Health Services and its employees, i.e. the medical defendants, is whether plaintiff's allegations sufficiently stated a constitutional tort of deliberate indifference to serious medical needs.

The county and the current sheriff are sued as public bodies ultimately responsible for providing medical care to those incarcerated in Broward County. Mr. Butterworth was the sheriff at the time of Ancata's death. The issue to be resolved as to these defendants, i.e., the non-medical defendants, is whether the district court properly dismissed the claims against them when it determined that any liability they may be exposed to was based solely upon notions of respondeat superior.

A. *The Medical Defendants and the Deliberate Indifference to Serious Medical Needs Claim*

The question before us is whether the allegations of plaintiff's complaint are sufficient to permit a jury to find that the medical defendants' conduct amounted to a deliberate indifference to serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).[5]

█ The medical defendants do not contest, and there can be no serious dispute, that if their actions resulted in a deprivation of Ancata's constitutional rights, they would be subject to liability pursuant to 42 U.S.C. § 1983. Although Prison Health Services and its employees are not strictly speaking public employees, state action is clearly present. Where a function which is traditionally the exclusive prerogative of the state (or here, county) is performed by a private entity, state action is present. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *see also Lawyer v. Kernodle*, 721 F.2d 632 (8th Cir.1983) (private physician hired by county to perform autopsies was acting under color of state law); *Morrison v. Washington County, Alabama*, 700 F.2d 678 (11th Cir.1983) (refusing to dismiss physician employed by county from § 1983 action); *Perez v. Sugarman*, 499 F.2d 761 (2d Cir.1974) (holding that state action was present for private institution's acts where the City of New York removed a child from the mother's custody and placed the child in a private child care institution).

█ If the complaint is sufficient, then dismissal for failure to state a claim is improper. Accepting plaintiff's allegations as true, and giving the plaintiff the benefit of all legitimate inferences from the complaint as we must, we conclude that the complaint sufficiently alleges a claim of deliberate indifference to serious medical needs.

There are at least three separate although somewhat overlapping aspects to plaintiff's claim of deliberate indifference. The first is plaintiff's allegation that the

---

**5.** Anthony Ancata was a pretrial detainee. *Estelle v. Gamble, supra,* dealt with individuals already convicted of a crime and incarcerated for those crimes, and thus was based upon the Eighth Amendment. Since Ancata was a pretrial detainee the due process clause and not the Eighth Amendment is the applicable constitutional provision. *See City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). However, as the Court made clear in *City of Revere,* the due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner.

defendants failed to provide even that level of diagnostic care that they themselves believed necessary. The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference. *See Robinson v. Moreland*, 655 F.2d 887 (8th Cir.1981). In *Ramos v. Lam*, 639 F.2d 559, 575 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981) the court said:

> Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment.

In this case the plaintiff alleged that the defendants knew that medical care was necessary but simply refused to provide it. The complaint maintains that the defendants concluded that Ancata required a psychiatric or orthopedic evaluation and refused to take the steps to see that he was properly evaluated. Instead, they placed the burden on decedent to obtain a court order for the very examination they believed necessary. Intentional failure to provide service acknowledged to be necessary is the deliberate indifference proscribed by the Constitution. *See Woodall v. Foti*, 648 F.2d 268, 272–73 (5th Cir.1981).

Second, plaintiff alleges that the defendants failed to secure medical care for Ancata because he would not pay. Delay in medical treatment cannot be justified as a means to coerce payment. *See City of Revere v. Massachusetts General Hospital, supra.* Furthermore, if necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out. *See Archer v. Dutcher*, 733 F.2d 14, 17 (2d Cir.1984). Plaintiff alleged that Ancata was indigent

and that the defendants put the financial interest of Prison Health Services ahead of the serious medical needs of Ancata.

Third, plaintiff alleges that the defendants failed to provide proper medical care. Plaintiff's allegations go far beyond that of simple mistake or negligence. Rather, they maintain that the medical care provided was so cursory as to amount to no treatment at all. Such actions, in the case of serious medical problems, may violate the Fourteenth Amendment. *See Tolbert v. Eyman*, 434 F.2d 625, 626 (9th Cir.1970). As the Third Circuit has noted under similar facts:

> Although the plaintiff has been provided with aspirin, this may not constitute adequate medical care. If, "deliberate indifference caused an easier and less efficacious treatment" to be provided, the defendants have violated the plaintiff's Eighth Amendment rights by failing to provide adequate medical care.

*West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978) (citations omitted).

Looking at the above-mentioned allegations in the plaintiff's complaint, as well as the other allegations contained therein, it is clear that the allegations contained in the plaintiff's complaint sufficiently state a constitutional claim that the medical defendants were deliberately indifferent to Ancata's serious medical needs. When the allegations indicate this type of indifference, dismissal prior to discovery is premature. Therefore, the decision of the district court is REVERSED as to this issue.

### B. *The Non-Medical Defendants and Respondeat Superior*

As to the non-medical defendants, i.e., the two sheriffs and Broward County, the district court dismissed the claims against them as being solely based upon respondeat superior.[6] We disagree. First,

---

**6.** The district court relied upon *Estelle v. Gamble*, 554 F.2d 653 (5th Cir.1977) (on remand from the Supreme Court decision *supra*) in its determination that the claims against the non-medical defendants were based upon respondeat superior. In *Estelle* the court stated:

> [W]hile the Director and the warden are parties, not for having failed to provide treatment, but more on respondeat superior principles in line with their official capacities. We can find no evidence in the record that either exhibited "deliberate indifference" to

as to Broward County. The county is responsible for insuring that adequate funds are provided to meet the medical needs of inmates. The complaint alleges that "Defendant Broward County is responsible for providing funds to insure that the medical needs of the inmates of the Broward County Jail are properly met.... The limited funds provided by the County may have contributed to deliberate indifference shown for the serious medical needs of Anthony Ancata." [7] The federal courts have consistently ruled that governments, state and local, have an obligation to provide medical care to incarcerated individuals. *See Estelle, supra.* This duty is not absolved by contracting with an entity such as Prison Health Services. Although Prison Health Services has contracted to perform an obligation owed by the county, the

county itself remains liable for any constitutional deprivations caused by the policies or customs of the Health Service. In that sense, the county's duty is non-delegable. [8] *See generally Wilson v. Taylor,* 733 F.2d 1539, 1545 (11th Cir.1984). [9] Lack of funds for facilities cannot justify an unconstitutional lack of competent medical care and treatment for inmates. *See Gates v. Collier,* 501 F.2d 1291 (5th Cir.1974); *see also Miller v. Carson,* 401 F.Supp. 835, 889–91 (M.D.Fla.1975), *aff'd* 563 F.2d 741 (5th Cir. 1977). [10]

Additionally, if Broward County established or utilized a policy or custom requiring that inmates needing medical assistance obtain court orders and the result of that policy or custom played a role in the delay in treatment and deliberate indiffer-

---

Gamble's medical needs by means of interference with the prison doctor's performance or in any other manner which would satisfy the Supreme Court standard.

554 F.2d at 654.

The allegations in this case are different in that the plaintiff alleges that the actions and policies of the county and the sheriff's office did affect in various ways the health care received by Mr. Ancata. The actions are not solely based upon their status as a public body.

**7.** Fla.Stat.Ann. § 951.032 states in pertinent part:

(1) A county detention facility or municipal detention facility incurring expenses for providing medical care, treatment, hospitalization, or transportation may seek reimbursement for the expenses incurred in the following order:

(a) From the prisoner or person receiving medical care, treatment, hospitalization, or transportation.

(b) From an insurance company, health care corporation, or other source if the prisoner or person is covered by an insurance policy or subscribes to a health care corporation or other source for those expenses.

Although the statute makes clear that the county can seek reimbursement from a person incarcerated, the plain wording of the statute indicates that the county has the responsibility for securing adequate medical treatment. A prisoner does not have to bargain for medical care. The county admits as much in its brief; "state law mandates that Broward County pay the medical expenses of prisoners incarcerated in the county jail." Brief of Appellee Broward County at 7.

**8.** However, if a constitutional tort committed by an employee of Prison Health Services was not

a result of the policy or custom of the entity, then the county would not be liable. Liability for the independent actions of a health service employee would be based upon respondeat superior and thus not actionable against the county under § 1983.

**9.** *See also Hearn v. City of Gainesville,* 688 F.2d 1328 (11th Cir.1982). In *Hearn,* the court made clear that where a governmental entity delegates the final authority to make decisions then those decisions necessarily represent official policy. 688 F.2d at 1334. The county has a duty to provide adequate medical care both under the United States Constitution and under Florida law. Thus, if Prison Health Services and/or its employees have the responsibility to make final decisions regarding a requirement that a prisoner pay for medical attention before receiving it or obtain a court order, then their acts, policies and customs become official policy. *See also supra* note 5 (explaining that Prison Health Services and its employees act under color of state law).

**10.** Plaintiff also maintains that if she prevails, she will be entitled to recover attorney's fees and costs pursuant 42 U.S.C. § 1988. She maintains the county is ultimately responsible for any attorney's fees or costs assessed against the sheriff. For this reason alone, she maintains that dismissal of the county is inappropriate, relying upon *Glover v. Alabama Board of Corrections,* 734 F.2d 691, 694 (11th Cir.1984). However, in light of Supreme Court's recent pronouncement in *Kentucky v. Graham,* —— U.S. ——, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) this contention appears to be without merit.

ence shown towards Anthony Ancata, then the county may be liable. *See Berdin v. Duggan,* 701 F.2d 909 (11th Cir.1983). Furthermore, if the county permitted the sheriff and/or prison health officials that it contracted with to establish such a policy or custom, it may also be liable. *See Trezevant v. City of Tampa,* 741 F.2d 336 (11th Cir.1984).[11] Such liability would not be based upon notions of respondeat superior. The liability would be a result of the county's own policy. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

▪ As to the defendant Robert Butterworth, he was sheriff at the time medical care was refused to Anthony Ancata. His liability, if any, would not necessarily be solely based upon respondeat superior. If plaintiff can establish, as she alleged, that the sheriff was personally involved in the acts depriving Anthony Ancata of his constitutional rights, or that he breached a duty imposed by state law and that that breach caused the plaintiff's injury, then he would be fully responsible for his own actions and/or policies. *See Baskin v. Parker,* 602 F.2d 1205 (5th Cir.1979); *Douthit v. Jones,* 641 F.2d 345 (5th Cir.1981). Furthermore, if Butterworth himself established or utilized a policy or custom requiring that inmates seek court orders to obtain medical services, then he would be liable if the result of that policy or custom played a role in any deliberate indifference to Ancata's medical needs. *Berdin v. Duggan,* 701 F.2d 909 (11th Cir.1983).

At the stage in the litigation at which Sheriff Butterworth was dismissed, i.e., prior to discovery, it is impossible to say whether Butterworth played a role in demanding the court orders as a condition of obtaining medical care. Nor is it known which, if any, of the defendants chose to place the financial interest of the county ahead of Ancata's medical needs. Thus,

dismissal prior to discovery was unwarranted.

Finally, defendant George Brescher, the sheriff at the time the case was filed, was sued in his official capacity as sheriff of Broward County. The issue of which entity is fiscally responsible, i.e., the sheriff's office or the county should be resolved before either one is properly dismissed. Until that issue is resolved, Brescher should remain a party to this litigation. *See Glover v. Alabama Department of Corrections,* 734 F.2d 691, 694 (11th Cir. 1984).

### C. *The Pendent State Law Claims*

As we have determined that plaintiff adequately alleged a federal claim, then we must determine that the district court's dismissal of the pendent state law claims was premature. Obviously, they derive from a common nucleus of operative fact and thus because the court, at present, has jurisdiction over the parties and because the federal claims asserted by the plaintiff are substantial, the pendent law claims are properly before the court. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1136, 16 L.Ed.2d 218 (1966).

Therefore, the decision of the district court is reversed and the case is remanded to the district court for proceedings consistent with this opinion.

**REVERSED and REMANDED.**

HENDERSON, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's disposition of this case except that portion of the opinion which reverses the district court's dismissal of George Brescher, the sheriff of Broward County at the time of the filing of this suit. The majority opinion accepts the appellant's argument that Brescher should not be dismissed as a party defendant until there is a resolution of which entity, the county or the sheriff, bears the fiscal re-

---

**11.** As we noted above, if, either expressly or by default, Broward County permitted others to decide or determine policy, it is liable for their actions if these policies prove unconstitutional.

*Wilson v. Taylor, supra* (holding that when a municipality gives a police chief the final authority to make a decision *Monell* standards for official policy are satisfied).

sponsibility for funding the jail's medical needs. I respectfully disagree with this conclusion.

The majority opinion states, "The county is responsible for insuring that adequate funds are provided to meet the medical needs of inmates." At 705. It notes that Broward County concedes in its brief that state law mandates that it pay the medical expenses of county prisoners. *Id.* at 705–06 n. 7. Given this admission, there is no need to inquire further into whether Brescher or Broward County would be liable for failure to provide the required funds. Since there are no other charges of liability against Brescher, he should not be required to further defend the action.