NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3434
_____

DARREN JOHNSON,

Appellant

v.

DOCTOR STEMPLER;
DOCTOR DENNIS MOYER;
COMMISSIONER MARTIN HORN;
PRISON HEALTH SERVICES, INC.;
CORRECTIONAL PHYSICIAN SERVICES, INC.

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civ. No. 2-00-cv-00711)
District Judge: Hon. Bruce W. Kauffman

Argued: September 30, 2009

Before: McKEE and CHAGARES, *Circuit Judges*, and
NYGAARD, *Senior Circuit Judge*

(Opinion filed: March 31, 2010)

SU MING YEH, ESQ.  (Argued)
ANGUS R. LOVE, ESQ.
Pennsylvania Institutional Law Project
718 Arch Street, Suite 304-S
Philadelphia, PA 19106
*Attorneys for Appellant, Darren Johnson*

ALAN S. GOLD, ESQ.  (Argued)
Gold & Ferrante, P.C.
261 Old York Road, Suite 526
Jenkintown, PA 19046
*Attorney for Appellees, Dennis Moyer, M.D.,*
*and Prison Health Services, Inc.*

KENNETH S. FAIR, ESQ.
Naulty, Scaricamazza & McDevitt, LLC
1617 JFK Boulevard, Suite 750
Philadelphia, PA 19103
*Attorney for Appellee, Dr. Norman Stempler*

THOMAS W. CORBETT, JR., ESQ.
Attorney General of the Commonwealth
of Pennsylvania
CLAUDIA M. TESORO, ESQ.
Senior Deputy Attorney General
CALVIN R. KOONS, ESQ.
Senior Deputy Attorney General
JOHN G. KNORR, III, ESQ.
Chief Deputy Attorney General
Chief, Appellate Litigation Section
*Attorneys for Appellee, Martin Horn*

OPINION

McKEE, *Circuit Judge*.

Darren Johnson, a state prisoner, appeals: (1) the district court's grant of  Martin Horn's Fed.R.Civ.P. Rule 12(b)(6) motion to dismiss an Eighth Amendment claim asserted against him by Johnson; (2) the district court's grant of summary judgment to Drs. Moyer and Stempler on an Eighth Amendment claim asserted against them by Johnson; (3) the district court's denial of two of Johnson's motions for appointment of counsel; and (4) the district court's denial of Johnson's Fed.R.Civ.P. 60(b)(2) motion.

2

For the reasons that follow, we will affirm the district court's grant of Horn's motion, the district court's grant of summary judgment to Drs. Moyer and Stempler and the district court's denial of two of Johnson's motions for the appointment of counsel. However, we will vacate the district court's denial of the Rule 60(b)(2) motion and remand for proceedings consistent with this opinion.

## I.

Inasmuch as we are writing primarily for the parties who are familiar with this case, we need not recite the factual or procedural background of this case, except insofar as is helpful to our discussion.

## A.

Johnson makes a number of arguments in challenging the district court's dismissal of his complaint. First, he contends that the district court erred in granting summary judgment to Drs. Moyer and Stempler on his Eighth Amendment claim.[1] We disagree. In

---

[1] The Eighth Amendment, through its prohibition of cruel and unusual punishment, imposes a duty on prison officials to provide humane conditions of confinement, including adequate medical treatment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A violation of the Amendment occurs when (1) a medical need is serious and (2) the acts or omissions by prison officials demonstrate "deliberate indifference" to the inmate's health or safety. *See Id.*, at 106; *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). The Supreme Court has clarified this "deliberate indifference" standard, explaining that is a subjective test, meaning the official must actually know of and disregard an excessive risk to the health of the inmate. *Farmer v. Brennan*, 511 U.S. 825, 829 (1994).

A medical need will be considered "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Lanzaro*, 834 F.3d at 347.

its thorough and well-reasoned opinion, dated January 5, 2005, the district court explained

why Drs. Moyer and Stempler were entitled to judgment as a matter of law on Johnson's

Eighth Amendment claim. 2005 WL 119575 at *3-5. We can add little, if anything, to

the district court's analysis and discussion. Accordingly, we will affirm the dismissal of

Johnson's Eighth Amendment claim against those doctors substantially for the reasons set

forth in the opinion of the district court.

**B.**

---

Under *Estelle*, deliberate indifference is present when prison officials intentionally deny or delay access to necessary medical treatment for non-medical reasons, or when they interfere with a course of treatment once prescribed. *Estelle*, 429 U.S. at 104-05; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Medical judgments by doctors or prison officials that later prove inappropriate or negligent, however, are not alone sufficient to give rise to an Eighth Amendment claim. *See Estelle*, at 106-07. Stated simply, inadequate medical practice is not a constitutional violation. *Id*. Accordingly, even when some medical care is administered by officials that arguably falls below the generally accepted standard of care, that medical care is generally sufficient to rebut accusations of deliberate indifference and preclude a finding of an Eighth Amendment violation. *See, e.g., Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) (stating that prison officials and doctors will be given wide latitude to address the medical needs of inmates and that "as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").

A local governmental agency may be a "person" for purposes of § 1983 liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Liability of such entities may not rest on *respondeat superior*, but rather must be based on a governmental policy, practice, or custom that caused the injury. *Id*. at 690-94. The same standard applies to a private health care provider that is acting under color of state law. *See, e.g., Anacata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

Finally, private prison doctors working under contract with the government act "under color of state law" for purposes of § 1983. *West v. Atkins*, 487 U.S. 42, 54-57 (1988).

4

Second, Johnson contends that the district court erred in granting a Rule 12(b)(6) dismissal of his Eighth Amendment claim against Secretary Horn in his individual capacity. In doing so, Johnson concedes that § 1983 liability cannot be imposed vicariously or on the basis of *respondeat superior*. Johnson's Br. at 38 (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). He claims, however, that he asserted that Horn was personally involved in "establishing and enforcing policies and practices related to his claim." *Id*.

Given Horn's alleged status as a policymaker, Johnson contends that Horn cannot escape that liability by contracting with private companies such as PHS or CPS. In Johnson's view, the delay in his receipt of knee surgery (the essence of his Eighth Amendment claim) is traceable to the deficient PHS or CPS policies, which in turn are traceable to deficient DOC policies that Horn was responsible for. Thus, according to Johnson, Horn is personally liable for any delay in receiving surgery.

Johnson bases his argument on *West v. Atkins*, 487 U.S. 42, 54-57 (1988) and *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 705-06 (11th Cir. 1985). However, *West* does not support his argument at all. *West* established that private prison doctors working under contract with the government act "under color of state law" for purposes of § 1983 and may be sued under that statute. 487 U.S. at 54-57. However, the Court did not address whether the head of an agency can he personally liable for a contract doctor's alleged malfeasance.

5

Johnson fares no better under *Ancata*. There, the personal representative of the estate of the deceased prisoner brought a § 1983 action against a county, two sheriffs and a private entity under contract with the county to provide medical care to inmates. The plaintiff asserted an Eighth Amendment claim alleging deliberate indifference to the prisoner's serious medical needs. The district court dismissed all claims against all the defendants. On appeal, the Eleventh Circuit held that local governments have an obligation to provide medical care to incarcerated individuals and that this duty is not absolved by contracting with a private entity to provide medical care. The local government's duty to provide medical care was non-delegable and liability remained with the local government, not under the theory of *respondeat superior*, but because the policy of the private entity became the policy of the local government. 769 F.2d at 705-06.

Here, however, Johnson is not asserting a claim against a local governmental agency. His claim is against Horn personally. Thus, *Ancata* does not support Johnson's contention that Horn is personally liable for the allegedly deficient policies of PHS and CPS.

Admittedly, in *Ancata*, the two sheriffs were kept in the case because the details of their personal involvement in the events at issue were unclear from the pleadings. *Id*., at 706. However, the record here clearly demonstrates that Horn had absolutely nothing to do with decisions about Johnson's treatment. Accordingly, the district court did not err in dismissing Johnson's Eighth Amendment claim against Horn.

6

## C.

Third, Johnson argues that the district court erred by refusing to appoint counsel for him prior to dismissing his Eighth Amendment claims against Drs. Moyer and Stempler and Secretary Horn. "Indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel." *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002) (citation omitted). Nonetheless, Congress has granted district courts the authority to "request" appointed counsel for indigent civil litigants. *See* 28 U.S.C. § 1915(e)(1) (providing that "[t]he court may request an attorney to represent any person unable to afford counsel"). District courts have "broad discretion" to determine whether appointment of counsel in a civil case would be appropriate. *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). In *Tabron*, we concluded that the decision to appoint counsel may be made at any point in the litigation, and may be made by a district court *sua sponte*. *Id*. at 156.

In *Tabron*, we articulated a list of factors to assist the district courts in deciding whether to appoint counsel for indigent civil litigants. As a threshold matter, the district court must determine whether the indigent plaintiff's case has some arguable merit in fact and law. *Id*. at 155. "If the district court determines that the plaintiff's claim has arguable merit in fact and law, the court should then consider a number of additional factors that bear on the need for appointed counsel." *Id*. These include: (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3)

the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses. *Id*. at 155-57.

We have noted that "[t]his list of factors is not exhaustive, but instead should serve as a guidepost for the district courts." *Parham v. Johnson*, 126 F.3d 454, 458 (3d Cir. 1997). Finally, we have cautioned that district courts "should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." *Id*. (citation omitted).

In denying Johnson's first two motions for the appointment of counsel, the district court said:

> Five law firms or attorneys have previously declined to represent [Johnson] in this case, and at least two of these rejections were based on the merits. After considering this fact, the Court, on October 22, 2001, ordered the Pro Se Writ Clerk to cease further efforts to appoint counsel in this matter.
>
> Efforts to appoint counsel that result in two rejections on the merits fulfill the requirements of the Prisoner Civil Rights Panel Program. "Where, in succession, two attorneys or law firms decline to accept a case after reviewing it thoroughly on the merits, no further request for representation shall be made unless there appear to be exceptional circumstances, such as plaintiff's serious mental or physical disability." Prisoner Civil Rights Panel Program Description at 2 (approved by the Board of Judges in the United States District Court for the Eastern District of Pennsylvania on December 20, 1993). Here, there is no evidence of serious mental or physical disability or any other exceptional circumstance.

8

Johnson does not argue that he was suffering from a serious mental or physical disability or that any other exceptional circumstance existed that would warrant the appointment of counsel when the district court rejected his motions. Moreover, as we noted in *Tabron*:

> We have no doubt that there are many cases in which district courts seek to appoint counsel but there is simply no one willing to accept appointment. It is difficult to fault a district court that denies a request for appointment under such circumstances.

6 F.3d at 157 (footnote omitted).

Given the circumstances here, we cannot conclude that the district court abused its discretion in denying Johnson's first two motions for appointment of counsel.

**D.**

Fourth, and finally, Johnson argues that the district court erred in denying his Rule 60(b)(2) motion based on its finding that the motion was untimely filed. Rule 60(b)(2) allows a district court to relieve a party "from a final judgment" based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b). However, such a motion must be brought within one year from the entry of the judgment.

The district court entered summary judgment in favor of Prison Health Services on January 18, 2005. After Johnson had counsel, his attorney reviewed the Asset Purchase Agreement between Correctional Physician Services and Prison Health Services, and filed a Rule 60(b)(2) motion on March 1, 2006, contending that Prison Health Services had

9

assumed the liabilities of Correctional Physician Services under the Asset Purchase Agreement. The district court denied the motion on October 5, 2006, finding that it was filed beyond the one-year time limitation. However, Rule 60(b) applies only to final judgments and the one-year time limitation imposed by the Rule does not apply to situations where the order in question was not properly appealable in the first place. The January 18, 2005, order granting summary judgment to Prision Health Services was not final because it did not dispose of all issues as to all parties. Therefore, the fact that Johnson filed his Rule 60(b) motion more than a year after the entry of that order is of no consequence. Accordingly, the district court erred by denying the motion as untimely. We will, therefore, vacate the October 5, 2006, order and remand with instructions that the district court consider the merits of Johnson's arguments concerning Prison Health Services liability under the Asset Purchase Agreement.

## IV. CONCLUSION

For all of the above reasons, we will affirm the district court's grant of summary judgment to Drs. Moyer and Stempler on Johnson's Eight Amendment Claim as well as the district court's grant of Horn's Rule 12(b)(6) motion to dismiss of Johnson's Eight Amendment claim asserted against him. We will also affirm the district court's June 2, 2003 denial of Johnson's January 21, 2003, and May 13, 2003, motions for appointment of counsel. However, we will vacate the district court's denial of Johnson's Rule 60(b)(2) motion and will remand for the district court to consider the merits of Johnson's

10

arguments concerning Prison Health Services' liability under the Asset Purchase

Agreement.